Mrs. B. V. Mohanty, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued September 15, 1978, before Judges MEN-
CER, BLATT and MACPHAIL, sitting as a panel of three.

*Amrit Lal,* for petitioner.

*Jean E. Graybill,* Assistant Attorney General, with
her *Kent D. Mikus,* Assistant Attorney General, and
*James R. Adams,* Assistant Attorney General, for re-
spondent.

OPINION BY JUDGE BLATT, November 17, 1978:

B. V. Mohanty (petitioner) has appealed to this
Court from a determination by the Department of
Public Welfare (DPW) that she is ineligible for child
day-care services because her family income is too
great.

In October of 1975, the petitioner applied and was
found eligible for day-care services for her only child.
The decision was based on income and need. In De-
cember of 1976, a redetermination of the petitioner's
eligibility was undertaken, and the petitioner informed
a case worker that her husband was now a resident
physician in a local hospital and, on request, produced
pay-check stubs to confirm his income. Thereafter,

the Philadelphia County Social Services Planning Unit decided to discontinue day-care services for the petitioner on the basis that her family income exceeded the maximum allowed figure for eligibility for a family of three. She then requested a hearing from the DPW and argued there that members of her husband's family living in India were supported by her husband and should be included in the family unit for the purposes of determining eligibility. The hearing officer disagreed and sustained the decision to terminate day-care services, whereupon the petitioner appealed to this Court.

The petitioner argues that the decision of the DPW should be reversed for the following reasons: (1) the DPW regulations fail to comport with applicable federal standards; (2) the DPW has not adhered to its own declared policies and procedures; (3) the DPW's definition of a family unit is arbitrary and violative of due process; and (4) the termination of day-care services amounts to expulsion of the child from school without just cause.

As to the first argument, the petitioner maintains that the DPW regulations are inconsistent with federal regulations, found at 45 C.F.R. §228.62(b)(2) (1977), which provide that day-care services be available without regard to income. The petitioner, however, misinterprets the regulation. It indicates that "[a] State may impose a fee on individuals who are provided services without regard to income (family planning services, information or referral services, or services to prevent or remedy abuse, neglect or exploitation of children and adults)," but it does not even suggest that day-care services must be provided regardless of income. Her next contention that the DPW has failed to set different fees for different services and geographic areas as required by 45 C.F.R. §228.62(c) is also without merit. The language of this

section is clearly permissive,[1] in that the state is allowed to set different fees but is not required to set such different fees. As to the claim that the DPW regulations fail to conform to standards and procedures for determination and redetermination of eligibility under 45 C.F.R. §228.61(a), which mandates compliance with the United States Constitution, the social security and civil rights laws, and other pertinent federal and state laws, the petitioner argues that she has been denied equal protection because her eligibility was terminated solely on the basis of an upward change in income. This assertion cannot be accepted, however, for the DPW regulation involved has an obviously rational relationship to a legitimate state interest, which is all that the Constitution requires in social welfare cases. *See Dandridge v. Williams,* 397 U.S. 471 (1970). Finally, we must reject the petitioner's broad assertion that the DPW regulations do not embody federal objectives as unmeritorious and unsupported.

The petitioner also argues that the DPW has not adhered to its own policies in that it established a "self-declaration system" of determining eligibility but required the petitioner to document her husband's income with pay-check stubs. As the DPW explains, however, in its brief, "[t]he adoption of the declaration method merely means that if, at the Department's option, documentation is not demanded and the client's declaration is accepted, Federal Financial Participation (FFP) is assured. To hold that by adopt-

---

[1] This section reads:

    (c) Criteria for fees. (1) Fees established by the State Agency:

    . . . .

    (ii) May be different for different geographic areas;

    . . . .

45 C.F.R. §228.62(c) (1977).

ing the optional declaration method the Department is no longer able to verify eligibility determinative items of information would invite rampant fraud." We agree. Likewise, we reject as untenable the petitioner's argument that because the DPW obtained $2.3 million in order "to insure that there will be no loss of service to existing clients,"[2] the petitioner as an existing client could not be deprived of the day-care services.

As to the petitioner's attack on the DPW's definition of a family unit as arbitrary and violative of due process, arguing that the nuclear-family concept of the DPW should not be used to determine eligibility for day-care services, we also find it unmeritorious. The DPW regulations are consistent with the federal requirements found at 45 C.F.R. §228.1 (1977);[3] and we do not believe that the United States Supreme Court decision in *Moore v. City of East Cleveland,* 431 U.S. 494 (1977), is controlling here. That case held a zoning ordinance unconstitutional which made it a crime for individuals outside the nuclear family to reside together because the law invaded protected family interests and lacked a rational relationship to a legitimate state interest. Here, however, there is no intrusion into family choice, and the regulation does have a rational relationship to the DPW's objective of determining eligibility based on family income.

The petitioner maintains finally that the terminating of day-care services amounts to expulsion of her child from school without just cause. Once again we must disagree. In the first place, enrollment in a state-supported day-care center is not a property

---

[2] 6 Pa. B. 1367.

[3] That section contains the following definition:

Family means one or more adults and children, if any, related by blood, or law, and residing in the same household. . . .

right. *See O'Leary v. Wisecup*, 26 Pa. Commonwealth Ct. 538, 364 A.2d 770 (1976). Moreover, eligibility for the day-care services at issue is based on family income, a rational standard. Having determined that the petitioner's income exceeds the maximum, and having afforded her a fair hearing, the DPW properly terminated eligibility. The DPW did not preclude petitioner from using other day-care services; it only terminated her eligibility to participate in a day-care program designed for families below a certain income level.

For the reasons stated above, we affirm the decision of the DPW.

ORDER

AND Now, this 17th day of November, 1978, the order of the Department of Public Welfare in the above-captioned matter is hereby affirmed.